**JOHNSON DEVELOPMENT COMPANY, Appellant,**

v.

**FIRST NATIONAL BANK OF ST. LOUIS, Respondent.**

No. ED 75362.

Missouri Court of Appeals, Eastern District, Division Five.

Aug. 24, 1999.

Thomas B. Weaver, Jennifer E. Cook, St. Louis, for appellant.

David Crane, St. Louis, for respondent.

KENT E. KAROHL, Judge.

Plaintiff, Johnson Development Company ("JDC"), appeals dismissal of its first amended petition for failure to state a claim upon which relief could be granted. JDC and co-plaintiff, Sovereign Homes, filed their petition alleging four counts against defendant, First National Bank of St. Louis ("First National"). JDC brought counts I and II and Sovereign Homes brought counts III and IV. The trial court found there was no just cause for delay of the appeal of the judgment dismissing JDC's claims and ordered Sovereign Home's cause of action stayed. Only JDC appeals and, therefore, we address the dismissal of counts I and II. First National did not file a respondent's brief. We reverse and remand.

Dismissal for failure to state a claim upon which relief can be granted is appropriate where the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief. *LaFont v. Taylor*, 902 S.W.2d 375, 376 (Mo.App. E.D. 1995). We review the dismissal of a plaintiff's petition for failure to state a claim upon which relief can be granted by assuming every fact pleaded in the petition to be true. *Lockhart v. Hallazgo*, 983 S.W.2d 577, 578 (Mo.App. E.D.1998); *Leeser Trucking, Inc. v. Pac–A–Way, Inc.*, 914 S.W.2d 40, 42 (Mo.App. E.D.1996). A plaintiff is entitled to the benefit of every favorable inference, which may reasonably come from the facts pleaded. *Lockhart*, 983 S.W.2d at 578.

In count I, JDC alleged that it opened a payroll checking account with First National in January 1993. Pursuant to agreement, First National processed checks authorized by JDC and debited funds from the account. During calendar years 1993 through 1998, First National paid monies on checks with the forged signature of JDC's vice-president in the amount of $598,500.00. An exhibit attached to the first amended petition itemized all of the checks.

JDC also averred the following facts. JDC's former bookkeeper/controller, employed until she was terminated in January 1998, forged the checks. The checks were improperly made out, not signed by the vice-president, but his signature forged thereon by the former employee. She forged the same name on each check, endorsed the checks and deposited them into her account at a different bank. Upon receiving the checks from the payee's bank, First National paid the amounts indicated on the checks and debited JDC's account. The vice-president first reported the forgeries to First National on February 27, 1998, four days after learning of the forgeries. JDC filed its first amended petition seeking damages for all amounts on every unauthorized check paid by First National that were reflected on the account statements sent to JDC within one year prior to the reporting date. The unauthorized checks during that period amounted to $265,000.00.

JDC's count II incorporated the allegations of count I and further alleged that First National owed JDC a duty to handle all matters related to the account with the highest degree of care. It alleged First National violated and breached that duty for nearly five years when it processed and debited JDC's account thereby causing damage to JDC. JDC further alleged that during most of the weeks during the relevant time period, approximately twenty to twenty-seven payroll checks were issued by JDC ranging in amounts from $55.81 to $2223.02, with the two principals of JDC receiving the only checks which exceeded $2000.00. The bookkeeper's actual payroll checks during the relevant time period were approximately $500.00 to $600.00 per week. Some of the forged checks were almost ten times her authorized weekly pay, greater than the sum of the two principals of JDC and disproportionate compared to all other checks debited from the account. Unlike all other employees, she received two payroll checks instead of one per pay period. Unlike any other checks, those forged were for even amounts (i.e., $1000.00 and $5000.00). JDC alleged that the forged checks were "obvious and easily detectable" and First National "knew or should have known, upon exercising the highest degree of care, or even a reasonable degree of care, that the Checks were forgeries. As a direct and approximate result of Defendant's negligence, JDC has been damaged in the amount of $598,500."

First National moved to dismiss JDC's petition alleging: (1) count I was precluded because JDC failed to notify First National of the forgeries within one year after receiving the first account statement which indicated payment of the forged checks; (2) count II was preempted by the UCC; and, (3) all claims were barred by the three-year statute of limitation within Missouri's UCC statute. The trial court dismissed with prejudice. JDC moved to amend and the trial court amended its order to reinstate count III brought by Sovereign Homes.

In its first point, JDC argues the trial court erred when it dismissed count I because, as a matter of law, the claims are not barred by any applicable statute of limitations in that: (1) the one year reporting requirement of section 400.4–406(f) RSMo 1994 [1] begins to run with each separate forged check; (2) the requirements of section 400.4–406(d)(2) are not a statute of limitation and are inappropriate as a basis for granting a motion to dismiss; and, (3) the statute of limitation in section 400.4–111 does not bar the claims because a new cause of action arose with each forged check.

■ Section 400.4–406(f) states, in pertinent part:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer ... discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

Count I of JDC's amended petition alleged First National was liable pursuant to the UCC for $265,000.00 for wrongful payment of checks containing forged signatures. The relevant facts supported that this amount reflected only the sum of the forged checks, which First National made available to JDC on bank statements beginning approximately February 27, 1997, one year prior to JDC notifying First National of the forgeries.

In its motion to dismiss, First National alleged that section 400.4–406(f) operates to bar an action for all of the forged checks because JDC did not "discover the wrongdoing and report their vice president's unauthorized signature within one year after FNB made any statement of account and/or item available for examination from

---

**1.** All statutory citations are to RSMo 1994, unless otherwise indicated.

which it could be determined that any payment was not authorized." In effect, First National interprets the statute as if it contains language that is not there. If the logic of First National's reading of the statute were followed, a victim of a series of forged checks happening over a term more than one year in duration would be without recourse for the checks forged after one year from "any statement of account" from which it could have been determined that it made one unauthorized payment. That is not what the statute says.

Implicit in the language of Missouri case law is that a new one-year limitation in section 400.4–406 begins to run on each separate check containing a forged signature or alteration, regardless of whether the same wrongdoer forged many checks over a term of years. *See Knight Communications, Inc. v. Boatmen's Nat'l. Bank of St. Louis*, 805 S.W.2d 199 (Mo.App.1991); *Dean v. Centerre Bank of North Kansas City*, 684 S.W.2d 373, 375 (Mo.App.1984) (Held that the one-year period was triggered from the date each statement was mailed). In *Knight Communications, Inc.*, we held that a customer could not recover for the bank's alleged breach where the evidence failed to identify which of 105 checks were discovered within one year after the receipt of statements. *Knight Communications, Inc.*, 805 S.W.2d at 203. Here, the petition alleged each check drawn on JDC's account within the one-year time period and those past the one-year period. The allegations of JDC's petition identify forged checks not barred by section 400.4–406 and the amount of the loss it sustained. JDC pleaded a specific amount, which was the sum of the checks within one year after the vice-president reported the forgeries to First National.

JDC concedes that it may not have the ability to recover for forgeries that occurred in 1994, 1995, 1996 and January 1997 because they are not within the statutory reporting period. The fact the statute bars recovery on some checks may be relevant for a jury's consideration in assigning fault but does not provide First National with a full defense, as a matter of law, for recovery on checks paid within the one-year period preceding notification. Thus, JDC stated a cause of action pursuant to section 400.4–406(f).

■ Section 400.4–406(d)(2) provides that if the bank proves that the customer failed to exercise "reasonable promptness" in discovering and notifying the bank of relevant facts of unauthorized payment, then the customer is precluded from asserting against the bank:

> the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank.

Section 400.4–406(d)(2). First National alleged in the motion to dismiss that it was not liable because JDC failed to report the forgeries within thirty days of the very first forgery. But, the defense implicates a question of fact, not a matter of law. Assuming, arguendo, First National was able to prove this, JDC can recover if "the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to the loss." Section 400.4–406(e). Whether First National exercised ordinary care is a question of fact for the jury to resolve. Sections 400.4–406(d)(2) and (e) require examination of evidence beyond that presented to the trial court in the motion to dismiss.

■ First National also alleged that JDC's "sole cause of action under [section] 400.4–406 is barred due to their failure to discover the forgeries and to initiate an action against FNB within three years from the time the subject account was first improperly charged." It relied on section

400.4–111 RSMo Cum.Supp.1998, which provides: "[a]n action to enforce an obligation, duty, or right arising under this Article must be commenced within three years after the cause of action accrues, and the statutes of limitation in chapter 516, RSMo shall not apply." First National alleged JDC's cause of action is subject to a three-year statute of limitations, which accrued in 1993 when the first forgery occurred. It alleged JDC failed to timely discover and report the forgeries and, thus is barred from asserting any of its claims. However, JDC alleged that the bookkeeper/controller was the wrongdoer, that the forgeries were not "capable of ascertainment" until after the wrongdoer was fired and that JDC's vice-president expeditiously reported the forgery four days after discovery. These facts are relevant on the issue of liability, but they preclude resolution in a motion to dismiss. *See, Consolidated Public Water Supply v. Farmers Bank*, 686 S.W.2d 844 (Mo.App.1985).

First National alleged and argued to the trial court that JDC's cause of action accrued from the first forgery in 1993. Although Chapter 400 does not define "accrued," it is illogical and inconsistent with the other Article Four provisions to find that the action accrued with the very first forgery. A separate cause of action accrued upon the payment of each check. Thus, the limitation period would begin to run with each check when the check is reported or made available to the customer. This position is consistent with Missouri law, which recognizes repeated misconduct in the "continuing or repeated wrong rule." *Lake St. Louis Community Ass'n v. Oak Bluff Preserve*, 956 S.W.2d 305, 309–310 (Mo.App. E.D.1997); *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746, 755 (Mo.App.1990) *citing Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 556 (Mo. banc 1980) (further citations omitted).

> Under this rule, 'each continuation or repetition of wrongful conduct may be regarded as a separate cause of action for which suit must be brought within

the period beginning with the occurrence.' *Vogel*, 801 S.W.2d at 755 *citing* Note, *Developments in the Law: Statutes of Limitations*, 63 Harvard Law Review 1177, 1205 (1950) (further citation omitted).

*Lake St. Louis Community Ass'n*, 956 S.W.2d at 310. Although these cases interpret Chapter 516 statute of limitations, the standard for accrual of action is instructive. We hold the limitation period in section 400.4–111 begins to run with each check when the check is reported or made available to the customer. JDC's count I is not barred by a UCC statute of limitation.

■ In its second point, JDC argues that the trial court erred when it dismissed count II, which alleges, in the alternative, a common law negligence claim, because Missouri's enactment of the UCC statute preempts such a claim. JDC argues that the issue of whether section 400.4–406 preempts common law claims of negligence is one of first impression in Missouri. We agree. However, we have held that the UCC preempts the common law where the provisions of the UCC contradict the common law. *See, Consolidated Public Water Supply*, 686 S.W.2d at 853. "It is inconceivable that those who drafted the U.C.C. intended to forbid recovery under the Code, but to permit the same remedy for the same wrong outside the Code." *Id.* Section 400.1–103, which contemplates additional general principles of law, states: "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity ... or other validating or invalidating cause shall supplement its provisions." Section 400.1–103.

Section 400.4–406(f) mandates that a customer discover and report an unauthorized signature within one year after the statement or item is made available. Section 400.4–406(f). This limitation is imposed on a customer regardless of the fault of either party. *Id.* A greater period of limitation for a common law negligence action for the same wrong would contra-

dict the limitation in UCC section 400.4–406 only for claims on checks issued outside the one-year limitation. It would not contradict the code limitation for checks issued within the period. The court erred in dismissing the alternative pleading in count II, which alleged negligence in paying checks within one year of JDC's discovery and report of the forged checks.

The trial court's judgment dismissing counts I and II is reversed and remanded.

ROBERT G. DOWD, Jr., P.J. and CHARLES B. BLACKMAR, Sr. J. concur.