IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-018

Filing Date: October 30, 2012

Docket No. 30,829

ASSOCIATED HOME AND RV SALES, INC.,
a New Mexico corporation, d/b/a ENCHANTMENT
RV and ENCHANTMENT RV SERVICE, a New
Mexico corporation; TEAM EVENTS, INC., a New
Mexico corporation; and MDM COMPANY, INC.,
a New Mexico corporation,

 Plaintiffs-Appellants,

v.

BANK OF BELEN,

 Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Alan M. Malott, District Judge

Crowley & Gribble, PC
Clayton E. Crowley
Albuquerque, NM

for Appellants

Parker & Hay, LLP
Stanley R. Parker
Topeka, KS

Aldridge, Grammer & Hammar, P.A.
David A. Grammer, III
Albuquerque, NM

for Appellee

OPINION

**CASTILLO, Chief Judge.**

**{1}** In this appeal, we address three issues. We consider for the first time whether NMSA 1978, Section 55-4-406 (1992) of New Mexico's Uniform Commercial Code (UCC) precludes common law claims for negligence and breach of contract in transactions involving forged checks. We also analyze the effects of Section 55-4-406's one-year statute of repose on its thirty-day limit for bringing actions involving the same serial forger. Lastly, we consider the district court's dismissal without prejudice of the count of fraud for lack of specificity. We conclude that the UCC does preclude the common law claim alleged in this case and affirm on that issue. We reverse the entry of summary judgment as to the statute of repose and consequently need not reach the issue regarding the dismissal of the fraud claim.

**BACKGROUND**

**{2}** Appellants are four corporations involved in the sales of recreational vehicles. The businesses are run by several family members and organized under the trade name Enchantment RV (Enchantment). In January 2003, Enchantment hired an employee (Employee) to assist with bookkeeping and to help balance the accounts of Enchantment's combined companies. In February 2003, Employee began forging checks on its accounts held at Bank of Belen (Bank) and, between February 2003 and October 2004, Employee forged 211 checks, mostly payable to herself or to "cash," stealing $283,546.85 from Enchantment. About a year and a half into the scheme, in late October and early November 2004, Enchantment discovered the forgeries, notified Bank, and submitted affidavits to that effect. Bank refused to repay Enchantment for any of the losses. According to Bank, it had provided statements on a monthly basis, including photocopies of canceled checks, to Enchantment for its various accounts, thus relieving it of its obligation to pay under the UCC. Enchantment brought this action, alleging common law claims of negligence, fraud, misrepresentation, breach of contract, and a violation of the New Mexico Unfair Practices Act (UPA). In its second amended complaint, it also alleged negligence under the UCC.

**{3}** Bank filed a number of pretrial motions. On a motion to dismiss the first amended complaint, the district court dismissed all of the claims except for fraud after ruling that the common law and UPA claims were displaced by the liability scheme of the UCC. After allowing for a second amended complaint to add the claim under the UCC, the district court dismissed without prejudice the fraud claim as improperly pleaded under Rules 1-009 and 1-012(B)(6) NMRA. Enchantment did not renew its fraud claim. After a period of discovery, the court granted Bank's motion for summary judgment, concluding that Enchantment failed to raise a genuine issue of material fact on its UCC claim. The case was dismissed and this appeal followed.

**DISCUSSION**

**I.      UCC Section 55-4-406 Precludes Common Law Claims in This Instance**

**{4}** This case presents an issue of first impression: whether Section 55-4-406 of the UCC precludes such common law claims as negligence and breach of contract under the set of circumstances presented here. We apply our de novo review to the question of "whether the district court applied the correct controlling legal principle to the facts and the court's application of that principle to the facts." *Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2011-NMCA-049, ¶ 17, 149 N.M. 746, 255 P.3d 324, *cert. granted*, 2011-NMCERT-005, 150 N.M. 667, 265 P.3d 718.

**{5}** Enchantment first contends that the district court erred in dismissing its common law claims, arguing that they are not preempted by Section 55-4-406 of the New Mexico UCC. Bank argues that the UCC provides a detailed and comprehensive scheme that allocates liability between a bank and its customers and provides banks with defenses to claims. Bank says that allowing common law claims to be brought in addition to actions under the UCC would frustrate the objectives of the Legislature in adopting the uniform law.

**{6}** A motion to dismiss is properly granted "only when it appears that the plaintiff cannot recover or be entitled to relief under any state of facts provable under the claim." *Valles v. Silverman*, 2004-NMCA-019, ¶ 18, 135 N.M. 91, 84 P.3d 1056 (internal quotation marks and citation omitted). Whether the district court properly dismissed the claims is a question we review de novo. *See id.* ¶ 6.

**{7}** The UCC states that "[u]nless displaced by the particular provisions of the [UCC], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy[,] and other validating or invalidating cause, supplement its provisions." NMSA 1978, § 55-1-103(b) (2005). However, we have previously noted that "comprehensive legislation, prescribing minutely a course of conduct to be pursued and the parties and things affected, and specifically describing limitations and exceptions, is indicative of a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter." *Rutherford v. Darwin*, 95 N.M. 340, 343, 622 P.2d 245, 248 (Ct. App. 1980) (internal quotation marks and citation omitted), *superseded by statute on other grounds as stated in Wisner Elevator Co. v. Richland State Bank*, 862 So. 2d 1112 (La. Ct. App. 2003). Common law principles are not preserved "in an area which is thoroughly covered by the UCC simply because they are not expressly excluded." *Id.*

**{8}** Article 4 of the UCC sets up a liability scheme and set of defenses to guide the relationship between a payor bank and its customers. *See generally* NMSA 1978, §§ 55-4-401 to -407 (1961, as amended through 2009). A forged or altered check is not properly payable, and a bank is strictly liable for the resulting loss to a customer. *Cf.* § 55-4-401(a) ("A bank may charge against the account of a customer an item that is properly payable . . . . An item is properly payable if it is authorized by the customer . . . .").

**{9}** Section 55-4-406(a), however, sets up a scale of liabilities that shift depending on the actions of the parties, and a bank may seek "safe harbor" from the above strict liability

3

scheme of Section 55-4-401 if it makes statements of account available to the customer on a regular basis. Section 55-4-406 cmt. 1. If a bank regularly provides a statement of account with information sufficient for the customer to identify the forgery, the customer must be reasonably prompt in notifying the bank of any forgeries; if the customer does so within thirty days of receiving the statement, the bank remains strictly liable for the loss. *See* § 55-4-406(a), (c). After that thirty-day period, however, the bank is liable only if the customer proves that the bank failed to exercise ordinary care in passing the forged item and that the bank's failure substantially contributed to the loss; in such a case, the loss is apportioned between the customer and the bank based on comparative negligence. *See* § 55-4-406(d), (e). Regardless of any lack of ordinary care on the part of the bank, if a year or more has passed from the customer's receipt of the statement identifying the forgery, the customer is precluded from bringing any claim under the UCC and must bear the entire loss. *See* § 55-4-406(f). The basis for the system of shifting liabilities triggered by the delivery of regular statements is explained in the comments to the statute.

> One of the most serious consequences of failure of the customer to comply with the requirements of [S]ubsection (c) is the opportunity presented to the wrongdoer to repeat the misdeeds. Conversely, one of the best ways to keep down losses in this type of situation is for the customer to promptly examine the statement and notify the bank of an unauthorized signature or alteration so that the bank will be alerted to stop paying further items.

Section 55-4-406 cmt. 2.

**{10}** In all jurisdictions, the federal counterpart to our Section 55-4-406, U.C.C. § 4-406 [Rev.] (the Code), is intended to further the public policy of requiring customers to be vigilant in examining bank statements and to carry out the common law duty of reporting forgeries within a reasonable time. *See* 7 Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 4-406:5 (2007 revision). While no court in New Mexico has considered the specific issue of whether Section 55-4-406 precludes a common law claim, other jurisdictions that have dealt with the issue have come down on the side of preemption by the UCC. *See, e.g.*, *Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 798 (2d Cir. 2011) (stating that "Article 4 precludes common law claims that would impose liability inconsistent with the rights and liabilities expressly created by Article 4" while allowing an exception for a common law breach of contract claim in that instance); *Halla v. Norwest Bank Minn., N.A.*, 601 N.W.2d 449, 451 (Minn. Ct. App. 1999) (denying a common law conversion claim because "parties in commercial transactions must be able to rely on the remedies provided by the Code" and there is "no reason to sacrifice the certainty and consistency of the [Code] remedies to preserve common law remedies"); *Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A.*, 909 F. Supp. 948, 956-57 (D.N.J. 1995) (stating that the Code "provides a comprehensive framework for allocating losses when a forged check enters the negotiation process" and that allowing a negligence claim "would circumvent the drawee's . . . 4-406 defenses"); *Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 714 (E.D. Pa. 2010) (holding that Pennsylvania's UCC "provides

a comprehensive remedy for the parties to the transaction—a delicate balance that would be disrupted by the allowance of common law negligence claims" and rejecting a common law negligence action); *see also* 5A Frederick M. Hart, Nathalie Martin & William F. Willier, *Forms and Procedures Under the Uniform Commercial Code* § 41.03 (LexisNexis 2012) (stating that the Code's "specificity preempts any common law negligence concepts regarding a bank's processing of checks").

**{11}** Although New Mexico courts have not specifically addressed Section 55-4-406, they have found that other provisions of the UCC displace common law claims. *See Brummund v. First Nat'l Bank of Clovis*, 99 N.M. 221, 224-25, 656 P.2d 884, 887-88 (1983) (NMSA 1978, § 55-9-311 (1961) (repealed, revised, reenacted 2001)); *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 57, 148 N.M. 627, 241 P.3d 628 (NMSA 1978, § 55-8-405 (1996)); *White Sands Forest Prods., Inc. v. First Nat'l Bank of Alamogordo*, 2002-NMCA-079, ¶¶ 1, 14, 132 N.M. 453, 50 P.3d 202 (NMSA 1978, § 55-3-406 (1992)); *Rutherford*, 95 N.M. at 343, 622 P.2d at 248 (NMSA 1978, § 55-3-206 (1992)). *White Sands Forest Prod.*, a similar case involving forged checks, took note of "the carefully crafted scheme of express statutory liabilities created by Article 3" in determining that common law claims are precluded. 2002-NMCA-079, ¶ 14.

**{12}** In the case before us, we agree with the other jurisdictions that Section 55-4-406 sets out a comprehensive scheme of liability and defenses in commercial practices between banks and customers, thus supporting the legislative intent, as articulated in *Rutherford* of superseding common law causes of action. Section 55-4-406 provides a specific remedy for a plaintiff seeking redress from a bank after the passage of forged checks, and it sets out defenses available to a bank. *See Wilde*, 2010-NMCA-085, ¶ 72. And like the analysis in *White Sands Forest Prod.*, where a parallel section of the UCC dealt with forged endorsements of checks, we see in Section 55-4-406 a carefully crafted scheme of express statutory liabilities that would be disturbed by introducing alternative causes of actions or a different balancing of liabilities based on common law tort theories.

**{13}** A look at the goals of the UCC's legislative scheme informs the question of whether confining causes of actions involving forged check transactions to the UCC scheme furthers those objectives. New Mexico's UCC is to be "liberally construed" to promote the following purposes and policies: "(1) to simplify, clarify[,] and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage[,] and agreement of the parties; and (3) to make uniform the law among the various jurisdictions." Section 55-1-103(a). "For the courts to interfere with the [UCC's] statutory scheme by superimposing tort rules, there must be sound policy reasons for finding the statutory scheme to be inadequate." *White Sands Forest Prod.*, 2002-NMCA-079, ¶ 14 (alteration in original) (internal quotation marks and citation omitted); *see also Bank Polska Kasa Opieki*, 909 F. Supp. at 956 ("Only in very rare instances should a court upset the legislative scheme of loss allocation and permit a common law cause of action."). The policy of the UCC is promoted when we confine claims involving forged checks against banks to the UCC's statutory scheme unless a reason exists

5

for the common law to supplement that scheme. *See Putnam Rolling Ladder Co. v. Mfrs. Hanover Trust Co.*, 546 N.E.2d 904, 908 (N.Y. 1989) ("By prospectively establishing rules of liability . . . , the [Code] not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution."); *Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 109 (Tex. 2004) ("Unlike tort law, the [Code] has the objective of promoting certainty and predictability in commercial transactions." (internal quotation marks and citation omitted)). The liability scheme of New Mexico's Section 55-4-406 simplifies and clarifies the law of commercial dealings between banks and customers, and it promotes consistency and certainty in such transactions. In the case before us, we conclude that Section 55-4-406 adequately provides a scheme of liabilities and defenses and thus precludes common law claims brought by Enchantment.

**{14}** As to the other claims disposed of on this motion to dismiss, Enchantment abandoned its argument for the claim of breach of contract and acknowledges that no evidence of a contract exists. Also, on appeal, Enchantment folded its UPA claim into its allegations of fraud, which is addressed in Section III below. First, we turn to the main issue of whether the district court erred in granting summary judgment for Bank.

## II.    Summary Judgment Was Improperly Granted

**{15}** Bank's motion for summary judgment argued that because it was undisputed that Enchantment did not report any forged checks until about eighteen months after it received the first account statement with forged checks, Enchantment is prohibited by Section 55-4-406 from making any claims against Bank. Enchantment responded that its claim was not time-barred by Section 55-4-406 because there were genuine issues of material fact as to whether Bank properly sent it a statement of account, whether Bank exercised ordinary care in paying the forged items, and whether Bank acted in bad faith. We analyze the parties' positions in light of the law regarding summary judgments.

## A.    The Claim Is Not Fully Time-Barred

**{16}** As a preliminary matter, the parties disagree over whether Section 55-4-406 places a time bar on Enchantment's action. The section states that a bank's customer is precluded from asserting a claim against a bank when a series of forgeries is committed by the same wrongdoer and the customer fails to notify the bank within thirty days of receiving the first statement that includes a record of the initial forgery in the series. *See* § 55-4-406(d)(2). Despite that restriction, a customer may still bring a claim after the initial thirty-day period if "the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to [the] loss[.]" Section 55-4-406(e). However, if the customer waits one year or more after receiving a statement, the customer is absolutely precluded from bringing a claim, regardless of the bank's culpability. Section 55-4-406(f).

**{17}** Bank contends that reading Section 55-4-406(d)(2) together with Subsection (f) leads to the conclusion that, because the forgeries at issue were the serial actions of the same

6

wrongdoer, no action is allowed outside of Section 55-4-406(d)(2)'s thirty-day window following the first statement sent to Enchantment after the first instance of forgery in early 2003. Bank further argues that even if evidence exists of a lack of ordinary care on the part of Bank, extending the window to one year would still result in a bar to bringing a claim. Bank's position is that the first statement after the initial forgery was sent in April 2003, and Enchantment did not notify Bank of the forgeries until November 2004 and that, because the forgeries were the work of the same employee, the one-year window closed in April 2004. Enchantment counters by reading Section 55-4-406(f) separately from Subsection (d)(2) and arguing that the one-year window to bring a claim begins anew when each statement in a series is sent to the customer, regardless of whether the same wrongdoer is responsible for the forgeries.

**{18}** We note that recognized authority sides with Enchantment. In *Neo-Tech Sys., Inc. v. Provident Bank*, 335 N.E.2d 395, 401 (Ohio Com. Pl. 1974), the court concluded that "the one[-]year limitation attaches to each separate check bearing an unauthorized signature and a new one[-]year period begins to run with each subsequent check when it is made available to the customer." *See also* 6A William D. Hawkland and Lary Lawrence, *Uniform Commercial Code Series* § 4-406:8 (Thomson Reuters/West 2012) ("The period is calculated separately as to each new statement.").

**{19}** Other jurisdictions agree. Responding to an argument similar to the one brought here by Bank and under an identically worded statute, the Missouri Court of Appeals rejected the link between Subsections (d)(2) and (f), positing that such logic "interprets the statute as if it contains language that is not there." *Johnson Dev. Co. v. First Nat'l Bank of St. Louis*, 999 S.W.2d 314, 317 (Mo. Ct. App. 1999). The court stated:

> If the logic of First National's reading of the statute were followed, a victim of a series of forged checks happening over a term more than one year in duration would be without recourse for the checks forged after one year from "any statement of account" from which it could have been determined that it made one unauthorized payment. That is not what the statute says.

*Id.* The court concluded: "Implicit in the language of Missouri case law is that a new one-year limitation in [S]ection 400.4-406 begins to run on each separate check containing a forged signature or alteration, regardless of whether the same wrongdoer forged many checks over a term of years." *Id.* Similarly, the Supreme Court of California read California's versions of Subsections (d)(2) and (f) separately, distinguishing the latter because it "declares only one rule using terms that suggest later items in a series are to be treated no differently from the first item or single items." *Sun 'n Sand, Inc. v. United Cal. Bank*, 582 P.2d 920, 935 (Cal. 1978). The court concluded that Subsection (f)'s "failure to explicitly differentiate between one-time and repetitive forgeries and alterations . . . leads us . . . to conclude that a new one-year period begins to run with each successive check." *Id.*; *accord Monreal v. Fleet Bank*, 735 N.E.2d 880, 882-83 (N.Y. 2000) (reaching the same conclusion though relying on the language of the New York statute that differs slightly from

New Mexico's).

**{20}** We agree with those analyses. While we see interplay between Subsections 55-4-406(d) and (e), we see no natural connection between Section 55-4-406(d)(2)'s "same wrongdoer" rule and the more general wording in Section 55-4-406(f). We conclude that Enchantment was entitled to try to prove a lack of ordinary care by Bank for the forgeries that occurred within one year of Enchantment alerting Bank of the forgeries.

**{21}** The question now becomes whether Enchantment brought forth evidence of a lack of ordinary care on the part of Bank that sufficiently raises a genuine issue of material fact to survive Bank's motion for summary judgment.

**B.       There are Genuine Issues of Material Fact**

**{22}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Tafoya v. Rael*, 2008-NMSC-057, ¶ 11, 145 N.M. 4, 193 P.3d 551 (internal quotation marks and citation omitted). "We resolve all reasonable inferences in favor of the party opposing summary judgment, and we view the pleadings, affidavits, depositions, answers to interrogatories, and admissions in the light most favorable to a trial on the merits." *Weise v. Washington Tru Solutions, L.L.C.*, 2008-NMCA-121, ¶ 2, 144 N.M. 867, 192 P.3d 1244. "Once the movant makes a prima facie case for summary judgment, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts [that] would require trial on the merits." *Id.* (internal quotation marks and citation omitted). "Where the evidence is susceptible to reasonable conflicting inferences bearing upon material facts, entry of summary judgment is improper." *Ellingwood v. N.N. Investors Life Ins. Co.*, 111 N.M. 301, 305, 805 P.2d 70, 74 (1991). "We are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application[.]" *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted). We review an order granting summary judgment de novo. *See Beggs v. City of Portales*, 2009-NMSC-023, ¶ 10, 146 N.M. 372, 210 P.3d 798.

**{23}** "In determining which issues of fact are material facts for purposes of Rule 1-056(C) [NMRA], we look to the substantive law governing the dispute." *Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 17, 139 N.M. 750, 137 P.3d 1204.

> An issue of fact is "genuine" if the evidence before the court considering a motion for summary judgment would allow a hypothetical fair-minded factfinder to return a verdict favorable to the non-movant on that particular issue of fact. An issue of fact is "material" if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute.

*Romero v. Philip Morris, Inc.* (*Romero I*), 2009-NMCA-022, ¶ 12, 145 N.M. 658, 203 P.3d

873 (citation omitted), *rev'd on other grounds by Romero v. Philip Morris, Inc.* (*Romero II*), 2010-NMSC-035, 148 N.M. 713, 242 P.3d 280.

**{24}** We now look to whether Enchantment raised a genuine issue of material fact regarding a lack of ordinary care on the part of Bank.

**C.    Statements Were Made Available As a Matter of Law**

**{25}** Initially, Enchantment appears to conflate the issue of whether the account statements were made available to the customer as set forth in Section 55-4-406(a) and the issue of whether the manner in which the statements were provided demonstrated a lack of ordinary care by Bank.  Accordingly, we will address each in turn.

**{26}** Enchantment contends that rather than mail monthly statements to Enchantment at its place of business, Bank provided the statements directly to Employee who was committing the forgeries.  Enchantment seems to be arguing that delivery to an employee is not sufficient under the statute.  We disagree.  Delivery of statements to the customer does not require the mailing of statements but merely that the bank make them available "in a reasonable manner," such as allowing them to be picked up by an employee of the customer. *Siecinski v. First State Bank of E. Detroit*, 531 N.W.2d 768, 770 (Mich. Ct. App. 1995) (internal quotation marks and citation omitted).  In the case before us, documents supporting Bank's motion for summary judgment show that Bank made the statements available to Enchantment, and Enchantment acknowledged receiving the statements each month.  While the statements were often picked up at Bank by Employee, Bank's supporting documents further show that Enchantment's senior officers reviewed the statements after Employee did and thus had ample opportunity to detect the forgeries.  When an employer entrusts the tasks of both handling checks and reconciling statements to the same employee, information contained in the statement is imputed to the employer. *See* 7 Lawrence, *supra*, § 4-406:14, at 493 ("Because the customer chose the agent to act on its behalf in examining the statement, the customer will be charged with whatever knowledge a reasonable examination by a loyal agent would have discovered."); *see also Menichini v. Grant*, 995 F.2d 1224, 1235 (3d Cir. 1993); *Kiernan v. Union Bank*, 127 Cal. Rptr. 441, 445 (Ct. App. 1976). Here, Bank made a prima facie case that it adequately provided monthly statements to Enchantment. Enchantment did not rebut the case.

**{27}** Enchantment also relies on its position that statements of accounts were not properly provided as one basis for its argument that Bank failed to exercise ordinary care in paying the items.  As we have explained, Enchantment has failed to rebut Bank's case that the statements were made available, so this argument can go no further.

**D.    There is a Question of Fact About the Exercise of Ordinary Care**

**{28}** Enchantment's other evidence of negligence stems from an affidavit by its CEO alleging that (1) Bank promised not to accept checks made out to cash unless an officer

presented the check; (2) signatures on the checks differed from those on signature cards kept on file by Bank; and (3) check amounts exceeded teller limits but were cashed without supervisor approval that had been promised by Bank.

**{29}** To survive a motion for summary judgment, the non-moving party may not rely upon mere allegations, but rather "must set forth specific facts showing that there is a genuine issue for trial." Rule 1-056(E). "When disputed facts do not support reasonable inferences, they cannot serve as a basis for denying summary judgment. Only when the inferences are reasonable is summary judgment inappropriate." *Romero II*, 2010-NMSC-035, ¶ 10. "A party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact once a prima facie showing is made by the movant." *Schwartzman v. Schwartzman Packing Co.*, 99 N.M. 436, 441, 659 P.2d 888, 893 (1983).

**{30}** Enchantment's task in opposing the motion for summary judgment was to put forth a genuine issue of material fact as to any lack of ordinary care on the part of Bank. The term "ordinary care" is defined in New Mexico's UCC. The term "means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." NMSA 1978, § 55-3-103(a)(9) (2005) (amended 2009).

**{31}** The customer bears the burden of showing that a bank failed to exercise ordinary care and that issue is generally one for the factfinder to decide. 6A Hawkland, *supra*, § 4-406:7. "The bank's lack of ordinary care may be demonstrated by proof that the bank's procedures were below the standard or that the bank's employees failed to exercise due care in processing the items." *Hanover Ins. Cos. v. Brotherhood State Bank*, 482 F. Supp. 501, 505 (D. Kan. 1979). "A lack of ordinary care on the part of the bank paying items under this provision of the [Code] may be established by proof either that the bank's procedures were below standard or that the bank's employees failed to exercise care in processing the items." *New Jersey Steel Corp. v. Warburton*, 655 A.2d 1382, 1387 (N.J. 1995) (internal quotation marks and citation omitted). "A bank must maintain reasonable supervision over its employees and procedures to guard against paying forged and altered checks." 6C Ronald A. Anderson & Lary Lawrence, *Anderson on the Uniform Commercial Code* § 4-406:75, at 475 (2000). "It would appear . . . that a customer could prove a bank lacked ordinary care by presenting any type of proof that the bank failed to act reasonably." *Putnam Rolling Ladder Co.*, 546 N.E.2d at 906.

**{32}** New Mexico courts have equated a bank's lack of ordinary care with a traditional negligence standard: "It is certainly not the intention of [Section] 55-4-406 to allow the bank to be insulated from the effect of its own negligence[.]" *Rutherford*, 95 N.M. at 344, 622 P.2d at 249. Generally, negligence is a mixed question of law and fact. *See Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 ("Negligence is generally a question of fact for the jury." (internal quotation marks and citation omitted)); *Candelaria v. Atchison, T. & S. F. R. Co.*, 6 N.M. 266, 286-87, 27 P. 497, 504 (1891) ("Negligence is

10

a mixed question of law and fact, but in case the material facts are undisputed it may become a question of law, and in such case the court may properly direct the verdict as the law requires."); *Bassett v. Sheehan*, 2008-NMCA-072, ¶ 9, 144 N.M. 178, 184 P.3d 1072 ("Breach of duty is generally a question to be decided by the fact[]finder."); *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 27, 142 N.M. 583, 168 P.3d 155 ("Determining the existence of a duty is a question of law for the court, whereas breach of duty and proximate cause are questions of fact for the jury." (citation omitted)).

**{33}**    In the case before us, Enchantment alleges generally negligent acts on the part of Bank. As evidence it offers the affidavit of its CEO, who stated:

> Initially we were told that . . . [B]ank would not accept corporate checks made out to "cash" unless an officer of the corporation presented the check. . . . [Employee] present[ed] checks well over $1,000.00 made out to "cash[,]" and it was well known that [Employee] was not a corporate officer. . . . The signatures were different between the signature cards and the checks and/or the endorsement. The checks were brought into . . . [B]ank signed, even though they were made out to cash. The check amounts exceeded teller limits and were often cashed without supervisor approval. Idamay Romero's name is spelled out on the signature that is on the signature card, yet the signature on the forgery only shows a straight line for the name "Romero."

**{34}**    New Mexico has not set a high threshold for a party to meet in order to survive a motion for summary judgment. *See Bartlett v. Mirabal*, 2000-NMCA-036, ¶¶ 35-38, 128 N.M. 830, 999 P.2d 1062 (rejecting the higher burden of proof created by the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and declaring that "we are at a loss in ascertaining what substantive benefits, if any, the case would have on the law of summary judgment in New Mexico"); *Romero II*, 2010-NMSC-035, ¶¶ 8-9 (similarly rejecting the analysis in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and declaring the Court's "refusal to align our state's approach with that of the federal courts"). Thus, our Supreme Court has refused to follow the path of federal courts in liberalizing the standards of summary judgment, preferring instead to continue making summary judgement a rarity. "New Mexico courts, unlike federal courts, view summary judgment with disfavor, preferring a trial on the merits." *Romero II*, 2010-NMSC-035, ¶ 8. "We continue to refuse to loosen the reins of summary judgment, as doing so would 'turn what is a summary proceeding into a full-blown paper trial on the merits.' " *Id.* ¶ 9 (quoting *Bartlett*, 2000-NMCA-036, ¶ 32).

**{35}**    In the case before us, Enchantment, the party opposing summary judgment, brought forth some evidence of a lack of ordinary care on the part of Bank. The CEO's affidavit alleges that Bank broke its promise to not accept checks made out to cash unless an officer presented the check; that signatures on the forged checks differed from those on signature cards kept on file by Bank; and that check amounts exceeded teller limits but were cashed without supervisor approval. The statements in the affidavit suggest that Bank acted

11

unreasonably and may have violated its own procedures and perhaps industry standards. The CEO's allegations sufficiently raise a genuine issue of material fact such that, if proved, the jury might find that Bank breached a duty of ordinary care. *See Romero I*, 2009-NMCA-022, ¶ 12. And a fact is material to the extent that it is "of consequence under the substantive rules of law governing the parties' dispute." *Id.* In sum, Enchantment did the bare minimum necessary to oppose the motion for summary judgment and raised genuine issues of material fact sufficient to survive Bank's motion, and it was error for the district court to grant the motion for summary judgment. We therefore do not need to reach the question of whether Bank acted in bad faith.

## III. The Adequacy of the Court for Fraud Need Not Be Addressed

**{36}** Finally, Enchantment contends that the district court improperly dismissed its fraud claim for failing to state a claim upon which relief could be granted. The fraud claim was dismissed without prejudice for lack of requisite specificity in July 2007, nearly three years before the motion for summary judgment was granted.

**{37}** We have previously noted the limitations on the right to appeal from the dismissal of a claim without prejudice. "Generally, an order of dismissal without prejudice is not appealable because it typically requires further proceedings." *Vescio v. Wolf*, 2009-NMCA-129, ¶ 7, 147 N.M. 374, 223 P.3d 371; *see also Bankers Trust Co. of Cal., N.S. v. Baca*, 2007-NMCA-019, ¶ 11, 141 N.M. 127, 151 P.3d 88 (noting that "dismissal without prejudice under Rule 1-041(E)(2) [NMRA] simply left the action as though it was never filed"); *Bralley v. City of Albuquerque*, 102 N.M. 715, 718, 699 P.2d 646, 649 (Ct. App. 1985) (stating that a dismissal without prejudice "ordinarily imports further proceedings" (internal quotation marks and citation omitted)). "The words 'without prejudice' when used in an order or decree generally indicate that there has been no resolution of the controversy on its merits and leave the issues in litigation open to another suit as if no action had ever been brought." *Bralley*, 102 N.M. at 719, 699 P.2d at 650.

**{38}** As we have noted, here the district court dismissed the claim of fraud without prejudice. Three years later, the entire complaint was dismissed with prejudice. We rely on law related to the dismissal of a complaint but apply this law to the facts before us. An order dismissing a complaint without prejudice "should be given a practical rather than a technical construction" when considering the appropriateness of an appeal. *Id.* at 718, 699 P.2d at 649. "Dismissal of a complaint without prejudice is only final and appealable if the order disposes of the case to the fullest extent possible in the court in which it was filed." *Vescio*, 2009-NMCA-129, ¶ 7; *see Vill. of Los Ranchos de Albuquerque v. Shiveley*, 110 N.M. 15, 17, 791 P.2d 466, 468 (Ct. App. 1989) ("A decision which terminates the suit, or puts the case out of court without an adjudication on the merits, is a final judgment."). In *Sunwest Bank of Albuquerque v. Nelson*, 1998-NMSC-012, ¶ 9, 125 N.M. 170, 958 P.2d 740, our Supreme Court considered an appeal from a district court's dismissal without prejudice of a case for improper venue. The court reasoned:

12

While the district court's order did not decide the merits of the claim or preclude filing in an alternate venue, it disposed of the matter to the fullest extent possible in the court in which the action was filed. Unlike the dismissal of a complaint with leave to file an amendment, this order did not provide a specified time or manner for refiling.

*Id.*

**{39}** In the case before us, the district court's dismissal without prejudice of the claim for fraud in July 2007 did not dispose of the case to the fullest extent possible. In fact, discovery continued until the court's May 2010 order granting summary judgment in favor of Bank. Up until that time, Enchantment had been given leave to amend its complaint on the fraud count. Because we reverse entry of the summary judgment, the matter is remanded to the district court for further proceedings which would include any motions related to the fraud claim. Accordingly, we need not reach the merits of the appeal of the district court's dismissal of the fraud count for lack of specificity.

**CONCLUSION**

**{40}** For the foregoing reasons, we affirm the district court's granting of the motion to dismiss on common law preclusion, and we the reverse the motion for summary judgment in favor of Bank. We remand for further proceedings consistent with this Opinion.

**{41}  IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for *Assoc. Home & RV Sales, Inc. v. Bank of Belen*, No. 30,829**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Summary Judgment
Time Limitations

**COMMERCIAL LAW**
Financial Institutions
Fraud
Negotiable Instrument
Uniform Commercial Code

**CONTRACTS**
Breach

**CRIMINAL LAW**
Forgery

**MISCELLANEOUS STATUTES**
Unfair Practices Act

**NEGLIGENCE**
Negligence, General
Standard of Care