This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37473

GLEN DAVIS, D & D SERVICES LLC,
and FOUR CORNERS TESTING LLC,

     Plaintiffs-Appellants,

v.

THE CITIZEN'S BANK a/k/a CITIZEN'S BANK
OF NEW MEXICO, and CITIZEN'S BANK,

     Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Daylene A. Marsh, District Judge

Law Office of Daymon Ely, Esq.
Daymon B. Ely
Albuquerque, NM

for Appellants

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Theresa W. Parrish
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}**    Plaintiff Glen Davis together with his businesses, Plaintiffs D & D Services LLC and Four Corners Testing LLC, (collectively, Davis) appeal the district court's order granting summary judgment in favor of Defendants The Citizen's Bank a/k/a Citizen's Bank of New Mexico and Citizen's Bank (collectively, Citizen's Bank), and dismissing Davis's complaint. Davis argues summary judgment was improper because he raised a

genuine issue of material fact as to Citizen's Bank's failure to exercise ordinary care, as required by NMSA 1978, Section 55-4-406 (1992), of the New Mexico Uniform Commercial Code (UCC) when Citizen's Bank paid checks forged by Davis's employee cashed at other financial institutions. We conclude that the district court did not err in its grant of summary judgment and therefore affirm.

**DISCUSSION**

**{2}** Davis brought claims against Citizen's Bank for failing to exercise ordinary care and/or acting in bad faith in paying forged checks negotiated outside of Citizen's Bank. Citizen's Bank moved for summary judgment, pursuant to Rule 1-056 NMRA, arguing that no genuine issue of material fact existed to show any negligence or lack of ordinary care on its part, as required by Section 55-4-406. After a hearing, the district court issued a letter decision granting Citizen's Bank's motion, and Davis appeals from the resulting order.

**{3}** We review a district court's ruling on a motion for summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "The movant need only make a prima facie showing that [it] is entitled to summary judgment[, at which point] the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). "A party opposing a motion for summary judgment must make an affirmative showing by affidavit or other admissible evidence that there is a genuine issue of material fact[.]" *Schwartzman v. Schwartzman Packing Co.*, 1983-NMSC-010, ¶ 22, 99 N.M. 436, 659 P.2d 888. "In determining which issues of fact are material facts for purposes of Rule 1-056(C), we look to the substantive law governing the dispute." *Farmington Police Officers Ass'n Commc'n Workers of Am. Local 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 17, 139 N.M. 750, 137 P.3d 1204.

**{4}** In reviewing the propriety of summary judgment in this case, we thus look to the applicable portions of the UCC for guidance. "Article 4 of the UCC sets up a liability scheme and set of defenses to guide the relationship between a payor bank and its customers[,]" and provides that "[a] forged or altered check is not properly payable, and a bank is strictly liable for the resulting loss to a customer." *Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 8, 294 P.3d 1276. "Section 55-4-406(a), however, sets up a scale of liabilities that shift depending on the actions of the parties, and a bank may seek 'safe harbor' from the above strict liability scheme . . . if it makes statements of account available to the customer on a regular basis." *Associated Home*, 2013-NMCA-018, ¶ 9. If the bank does so, the responsibility then shifts to the customer to promptly examine the statements and notify the bank of any unauthorized payments. *Id.*; *see* § 55-4-406(c). The bank is strictly liable for any loss resulting from a forged check if the customer informs the bank of the fraudulent check within thirty days

of receiving the bank statement. *Associated Home*, 2013-NMCA-018, ¶ 9; *see* § 55-4-406(c), (d)(2). "After that thirty-day period, however, the bank is liable only if the customer proves that the bank failed to exercise ordinary care in passing the forged item and that the bank's failure substantially contributed to the loss; in such a case, the loss is apportioned between the customer and the bank based on comparative negligence." *Associated Home*, 2013-NMCA-018, ¶ 9; *see* § 55-4-406(d), (e). "Regardless of any lack of ordinary care on the part of the bank, if a year or more has passed from the customer's receipt of the statement identifying the forgery, the customer is precluded from bringing any claim under the UCC and must bear the entire loss." *Associated Home*, 2013-NMCA-018, ¶ 9; *see* § 55-4-406(f). The rationale behind this system of shifting liabilities, which is triggered by the bank's provision of regular account statements, is set out in the comments to the UCC.

> One of the most serious consequences of failure of the customer to comply with the requirements of [Section 55-4-406(c)] is the opportunity presented to the wrongdoer to repeat the misdeeds. Conversely, one of the best ways to keep down losses in this type of situation is for the customer to promptly examine the statement and notify the bank of an unauthorized signature or alteration so that the bank will be alerted to stop paying further items.

Section 55-4-406 cmt. 3. We likewise have explained that "[i]n all jurisdictions, the federal counterpart to our Section 55-4-406 . . . is intended to further the public policy of requiring customers to be vigilant in examining bank statements and to carry out the common law duty of reporting forgeries within a reasonable time." *Associated Home*, 2013-NMCA-018, ¶ 10. With this backdrop, we evaluate the grant of summary judgment in this case.

**{5}** The parties agree that Citizen's Bank made statements of account available to Davis on a regular basis. And Davis does not dispute the fact that his employee cashed hundreds of forged checks over approximately three years before Davis informed Citizen's Bank. Consequently, Davis admits he is only eligible to "recover the amounts embezzled within one year prior to [him] notifying [Citizen's] Bank of the forgeries." *See id.* ¶¶ 19-20 (holding that a new one-year statute of limitations begins to run on each separate forged check and a plaintiff is "entitled to try to prove a lack of ordinary care by [the b]ank for the forgeries that occurred within one year of [the plaintiff] alerting [the b]ank"). Additionally, because Davis did not inform Citizen's Bank of the fraudulent checks within thirty days of receiving his bank statements, Citizen's Bank is not strictly liable for any resulting losses. *See id.* ¶ 9. Although not strictly liable, Citizen's Bank may still be held comparatively negligent for failing to act with ordinary care. *See id.* ¶¶ 9, 20.

**{6}** Before the district court, Davis did not dispute any of the material facts iterated by Citizen's Bank in support of its motion for summary judgment. Specifically, in 2009, Davis and his wife opened a checking account at Citizen's Bank and accepted agreements regarding the terms applicable to the use and maintenance of the account.

Citizen's Bank made statements of account available to Davis each month. At some point, Davis gave his employee full access to the business's blank checks and daily mail, including the monthly bank statements. Davis's employee wrote checks payable to herself typically in amount of $1,800 to $1,900, forged Davis's signature, negotiated those checks at one of two credit unions where she banked, and kept the funds she received. Davis did not review the monthly bank statements, or the images of the checks paid out of his account, provided by Citizen's Bank. As a result, Davis's employee issued and negotiated 216 checks from 2011 through 2013, fraudulently obtaining more than $215,000, without being detected. Every bank statement issued by Citizen's Bank included an express warning that customers were required to examine the statement and report any irregularities within thirty days. In addition, the documents executed between the parties when Davis opened the bank account included terms regarding check processing, reviewing statements and checks, and the timely reporting of any irregularities.

**{7}** Now on appeal, Davis does not contest that Citizen's Bank met its initial burden under Rule 1-056, but instead contends there exists a genuine issue of material fact as to whether Citizen's Bank failed to exercise ordinary care. "Ordinary care" is defined by the UCC as "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." NMSA 1978, § 55-3-103(a)(9) (2009). Among other ways, "[t]he bank's lack of ordinary care may be demonstrated by proof that the bank's procedures were below the standard or that the bank's employees failed to exercise due care in processing the items." *Associated Home*, 2013-NMCA-018, ¶ 31 (internal quotation marks and citation omitted). Thus, to overcome summary judgment, Davis had the burden to put forth evidence raising a genuine issue of material fact as to Citizen's Bank's failure to exercise ordinary care. *See id.* ¶¶ 30-31.

**{8}** *Associated Home*, a case cited by both parties, demonstrates the type of evidence necessary to raise a genuine issue of material fact as to ordinary care under Section 55-4-406 of the UCC. *Associated Home*, 2013-NMCA 018, ¶ 35. In that case, the plaintiffs sued their bank under the UCC seeking repayment from the bank for cashing numerous checks forged by the plaintiffs' employee. *Id.* ¶¶ 2, 35. The bank was awarded summary judgment on the basis that it "provided statements on a monthly basis" to the plaintiffs that included details of the forged checks as required under the UCC. *Id.* ¶¶ 2, 3. The plaintiffs appealed and this Court reversed, holding, in relevant part, that the plaintiffs had "brought forth some evidence of a lack of ordinary care on the part of [the b]ank." *Id.* ¶ 35. Specifically, the plaintiffs presented an affidavit from their CEO with evidence that

> [the b]ank broke its promise to not accept checks made out to cash unless an officer presented the check; that signatures on the forged checks differed from those on signature cards kept on file by [the b]ank; and that check amounts exceeded teller limits but were cashed without supervisor approval.

*Id.* Because "[t]he statements in the affidavit suggest that [the b]ank acted unreasonably and may have violated its own procedures and perhaps industry standards[,]" we held that the affidavit "sufficiently raise[d] a genuine issue of material fact such that, if proved, the jury might find that [the b]ank breached a duty of ordinary care." *Id.* We, however, observed that the showing by the plaintiffs in *Associated Home* was "the bare minimum necessary to oppose the motion for summary judgment[.]" *Id.*

{9}     Here, in support of his claim that Citizen's Bank failed to exercise ordinary care, Davis presented additional facts setting out Citizen's Bank's monitoring procedures for forged checks cashed at *its own bank locations*. In particular, if an individual comes "into [Citizen's] Bank and [he or she is] not a customer, and they are cashing a check for more than $500, the tellers are instructed to review the signature card." Davis thus asserted that "if [his employee] had come into Citizen's Bank to cash a check, the tellers would have checked the identification and 'probably' talked to a supervisor." But "none of these procedures were in place because the forged checks were presented at a [b]ank other than Citizen's Bank[,]" and there are "no procedures for presenting forged checks at another [b]ank." Davis finally contends that "[i]t is possible for [Citizen's] Bank to determine whether or not there is such unusual [fraudulent check] activity [for checks cashed at other financial institutions,] but the Bank chooses not to do so and does not tell the customer that fact."[1]

{10}    The question is whether the foregoing raises "a genuine issue of material fact as to any lack of ordinary care on the part of [Citizen's Bank]"—we hold that it does not. *Associated Home*, 2013-NMCA-018, ¶ 30. The only evidence set forth in support of Davis's argument were deposition excerpts of Citizen's Bank's president and vice president, who explained the procedures in place for monitoring forged checks negotiated at Citizen's Bank's own bank locations. Davis cites this evidence, suggesting Citizen's Bank was negligent in failing to implement similar procedures for checks cashed at other financial institutions but providing no evidence to substantiate such a contention. Indeed, Davis failed to bring forth any evidence to support his theory that Citizen's Bank's failure to implement such procedures breached any promise or duty of care. *See id.* ¶ 35 (concluding evidence that the bank broke a specific promise, among other things, was sufficient to raise a genuine issue of material fact that the bank breached a duty of care); *see also Romero*, 2010-NMSC-035, ¶ 10 ("[T]he party opposing the summary judgment motion must adduce evidence to justify a trial on the issues." (internal quotation marks and citation omitted)); *V.P. Clarence Co. v. Colgate*, 1993-NMSC-022, ¶ 2, 115 N.M. 471, 853 P.2d 722 ("[T]he briefs and arguments of

---

1There is a question whether the cited deposition testimony actually supports these final propositions. *See Parker v. E.I. DuPont de Nemours & Co.*, 1995-NMCA-086, ¶ 15, 121 N.M. 120, 909 P.2d 1 ("The burden of coming forward with evidence showing the existence of material, disputed factual issues is not satisfied by unsupported assertions of fact."). We, however, need not evaluate whether these propositions are properly supported by admissible evidence because they are rendered immaterial by our conclusion that—regardless of whether it was *possible* for Citizen's Bank to track fraudulent check activity when checks are cashed at other financial institutions—Davis has not set forth evidence showing that any inaction by Citizen's Bank violated industry standards or its own rules and procedures.

counsel are not evidence upon which a trial court can rely in a summary judgment proceeding.").

**{11}** Davis presented no evidence, for example, that according to industry standards, as shown by affidavit or other admissible evidence, area banks have procedures in place to monitor checks drawn from their customers' accounts cashed at other financial institutions or what those procedures might be. Without establishing what is industry standard, Davis cannot and did not demonstrate that Citizen's Bank's failure to have certain procedures in place violated such standards. Nor did Davis present evidence that Citizen's Bank violated its own rules or procedures when it paid the forged checks that were negotiated elsewhere. This is in contrast to *Associated Home*, in which the plaintiffs put forth evidence demonstrating that the bank may have failed to adhere to its own procedures and industry standards. *See* 2013-NMCA-018, ¶ 35 (illustrating the type of evidence that is sufficient to demonstrate a lack of ordinary care). Absent any such evidence, we conclude that Davis has not established the existence of a genuine issue of material fact as to the lack of ordinary care under Section 55-4-406 on the part of Citizen's Bank. Davis's bare assertion—that Citizen's Bank could have, but chose not to, implement procedures to monitor for forged checks cashed at other financial institutions—without more, is insufficient.

## CONCLUSION

**{12}** For the foregoing reasons, we affirm the district court's grant of summary judgment.

**{13} IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**