2002-NMCA-079

50 P.3d 202

**WHITE SANDS FOREST PRODUCTS, INC., Plaintiff–Appellee,**

v.

**FIRST NATIONAL BANK OF ALAMOGORDO, Defendant–Appellant.**

**No. 22,225.**

Court of Appeals of New Mexico.

June 10, 2002.

Wendell B. Lane, Wendell B. Lane, P.C. Alamogordo, NM, for Appellee.

Lynne Pruett, Hakanson & Pruett, P.C., Alamogordo, NM, for Appellant.

## OPINION

ALARID, Judge.

### INTRODUCTION

{1} This case requires us to decide whether NMSA 1978, § 55-3-406 (1992) creates a statutory cause of action against a depositary bank for allegedly failing to exercise ordinary care in taking for collection numerous checks bearing a forged drawer's signature. We hold that Section 55-3-406 does not create a statutory negligence action against a depositary bank for alleged negligence in taking checks bearing a forged drawer's signature.

### BACKGROUND

{2} Plaintiff-Appellee, White Sands Forest Products, Inc. (White Sands), is a New Mexico corporation with its principal place of business in Alamogordo. Defendant-Appellant, First National Bank of Alamogordo (First National), is a national banking association, with its principal place of business in Alamogordo. In February 1999, White Sands brought suit against First National. White Sands' complaint asserted three counts: negligence, conversion, and recoupment. White Sands alleged that it maintained a checking account with Key Bank of Portland, Oregon (Key Bank), and that, beginning as early as January 1995, and continuing through February 1998, an employee (Forger) stole blank check forms for the Key Bank account and used those forms to make out checks naming herself as payee. According to the complaint, Forger, who did not have authority to sign checks on the Key Bank account, forged signatures of White Sands' employees having actual authority to sign checks for White Sands, indorsed the checks with her own signature, and cashed them at various branches of First National. White Sands

alleged that during the period of January 1995 through February 1998, Forger forged 340 checks, totaling $433,375.95; and, that Forger presented the 340 checks to First National, which paid them. The record contains evidence that Key Bank provided White Sands with monthly statements of its account; that the cancelled forged checks were returned with these statements; and, that White Sands did not have actual knowledge of the alleged forgeries until March, 1998.

{3} First National moved for summary judgment as to all three claims. With respect to Count I, First National argued that it should be allowed to derivatively assert the defenses available to a payor bank under NMSA 1978, § 55–4–406 (1992); and that, as Section 55–4–406 precluded White Sands from recovering from Key Bank, White Sands was precluded from any recovery against First National. In its response, White Sands argued that (1) Section 55–4–406 applied only to payor banks and that First National was not a payor bank, and (2) there were genuine issues of material fact as to the defenses actually available to White Sands. In its reply, First National argued that White Sands was barred from bringing a direct action against First National; but that, if the action were allowed, First National was entitled to the defenses available under Section 55–4–406. In an October 8, 1999 order, the district court granted summary judgment in favor of First National on all three counts. With respect to Count I, the district court reasoned that under a common-law theory of negligence, White Sands had made out a case sufficient to withstand summary judgment, but that Section 55–3–406 had displaced a common-law negligence cause of action and White Sands had not pleaded a Section 55–3–406 statutory cause of action. On October 14, 1999, White Sands moved for reconsideration, arguing that it had adequately pleaded a statutory cause of action under Section 55–3–406. First National argued in response that "[S]ection [55–]3–406 is a defensive provision and does not provide an independent basis for a negligence cause of action."

{4} At the October 29, 1999 hearing on White Sands' motion for reconsideration, the district court indicated its intention to grant the motion for reconsideration. However, the district court did not enter an order on White Sands' motion for reconsideration within thirty days of the date of filing of White Sands' motion for reconsideration; and by operation of NMSA 1978, § 39–1–1 (1897, as amended 1917), White Sands' motion for reconsideration was deemed denied and the district court deprived of jurisdiction as of November 13, 1999. On December 6, 1999, the district court entered an order purporting to grant White Sands' motion for reconsideration. White Sands, recognizing the jurisdictional problem resulting from the district court's delay in entering an order on the motion for reconsideration, filed a notice of appeal from the October 8, 1999 order granting First National's motion for summary judgment.

{5} White Sands did not appeal the adverse judgment on Count II (conversion) and Count III (recoupment), nor did it appeal the district court's ruling that the UCC has preempted any common-law negligence action against a depository bank for failure to exercise ordinary care in taking checks. In its docketing statement, White Sands explained that due to the district court's delay in entering an order on White Sands' motion, White Sands had been "required to file this appeal, asking the Court of Appeals to order the Trial Court to take the action the Trial Court intended to take anyway." As to the merits of its appeal, White Sands asserted that under our system of notice pleading, its complaint adequately alleged a statutory cause of action under Section 55–3–406 against First National for failure to exercise ordinary care in taking the 340 forged checks. We agreed, and in our calendar notice assigned the appeal to the summary calendar, proposing summary reversal as to Count I of the complaint on the ground that White Sands' complaint gave "fair notice to Defendant that Plaintiff was making a claim under the UCC." First National did not file a memorandum in opposition to this disposition. We reversed in a brief memorandum opinion.

{6} On remand, White Sands moved for summary judgment on the issue of First

National's entitlement to assert the affirmative defenses available to payor banks under Section 55–4–406. In its response, First National argued that Section 55–3–406 did not create a cause of action in favor of White Sands against First National; but, that if it did, then First National should be entitled to assert statutory affirmative defenses available to payor banks. The district court granted summary judgment in favor of White Sands, ruling that White Sands was "entitled to judgment as a matter of law on defenses asserted by Defendant, First National Bank in Alamogordo."

{7} In its order granting summary judgment, the district court found that "this decision involves a controlling question of law as to which there is substantial grounds for difference of opinion, and an immediate appeal from this decision may materially advance the ultimate termination of this litigation." First National applied to this Court pursuant to Rule 12–203 NMRA 2001 and NMSA 1978, § 39–3–4 (1971). We granted First National's application and have appellate jurisdiction pursuant to Section 39–3–4(B).

## DISCUSSION

{8} Although considerable portions of the parties' briefs are devoted to the question of the affirmative defenses available to a depositary bank being sued by the purported drawer of forged checks for failure to exercise due care in taking the checks, we conclude that a more basic question is whether Section 55–3–406 even creates an affirmative cause of action in favor of drawers such as White Sands. As we explain below, Section 55–3–406 does not give rise to an affirmative cause of action in favor of a *purported* drawer against a depositary bank; consequently, the question of the scope of the defenses to such a claim does not even arise.

{9} Section 55–3–406 provides:

(a) A person whose failure to exercise ordinary care substantially contributes to ... the making of a forged signature on an instrument is precluded from asserting the ... forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) Under Subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(c) Under Subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under Subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

{10} As the district court observed in the course of the hearing on White Sands' motion for summary judgment, Section 55–3–406 appears to operate solely as a defense:

[The District Court:] "Section [55–]3–406 does not make the negligent party liable in [tort] for damages...." That sounds at first blush like a statement that "we're not creating a cause of action here. We're describing the bounds of some cause of action that arises from somewhere else." And if so, where does this cause of action in [55–]-3–406 arise?

White Sands' answer to the district court's question is that Section 55–3–406 itself creates an affirmative statutory cause of action against First National.

{11} We do not find support in Article 3 for a statutory negligence cause of action based upon Section 55–3–406 in favor of drawers against depositary banks. The official comments to the UCC are "persuasive authority." *Rutherford v. Darwin*, 95 N.M. 340, 343, 622 P.2d 245, 248 (Ct.App. 1980). As the district court recognized, the official comment to Section 55–3–406 expressly disclaims any intention to make a negligent party liable in tort. Further, as NMSA 1978, §§ 55–3–404(d) (1992) and 55–3–405(b) (1992) demonstrate, the drafters of Article 3 clearly understood how to create an affirmative cause of action based upon a party's failure to exercise ordinary care. The phrase "the person bearing the loss *may recover from* the person failing to exercise ordinary care" contained in Sections 55–3–

404(d) and 55-3-405(b) is noticeably absent from Section 55-3-406.

{12} In addition, we note that drafters of revised Article 3 expressly rejected the position taken by *Sun 'N Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal. Rptr. 329, 582 P.2d 920 (1978), which held that presentment warranties run to the drawer of a check. NMSA 1978, § 55-3-417 (1992), Official Comment 2. The presentment warranties running to a drawee are more limited than the warranties made to other transferees, *compare* NMSA 1978, § 55-3-417(a)(3) (1992) (presentor warrants to drawee that presentor has no knowledge that the signature of the drawer is unauthorized) *with* NMSA 1978, § 55-3-416(a)(2) (1992) (transferor warrants that all signatures are authentic and authorized), with the result that the presentment warranties normally will not be breached unless the depositary bank had actual knowledge of a forged drawer's signature when it took the item, *see* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 18-7 at 232-34 (4th ed.1995). Allowing a statutory negligence action in favor of drawers would allow a depositary bank to be sued based upon allegations of a mental state less than actual knowledge of a forgery-i.e., allegations that the depositary bank should have known of the forged drawer's signature. We think it unlikely that the drafters intended a drawer to have a negligence cause of action against a depositary bank that merely should have known it had taken a forged check, when those same drafters were unwilling to extend to drawers the benefit of an express presentment warranty creating a cause of action against a depositary bank that had actual knowledge that the drawer's signature was forged.

{13} We recognize that some commentators have stated that UCC Section 3-406 does give rise to an affirmative cause of action. White & Summers, *supra,* § 19-1 at 239. However, these authors' discussion is noteworthy for its complete failure to address Official Comment 1 to Section 3-406. Other leading commentators are more cautious, observing merely that "[t]his provision seems to be purely defensive in nature, although conceivably it could constitute grounds for affirmative action by a party forced to reimburse a victim." 2A Frederick M. Hart & William F. Willier, *Negotiable Instruments under the Uniform Commercial Code* § 12.37 (2001).

{14} We conclude that White Sands has not made out a persuasive case for superimposing a statutory negligence cause of action on the carefully crafted scheme of express statutory liabilities created by Article 3. "For the courts to interfere with the [UCC's] statutory scheme by superimposing tort rules, there must be sound policy reasons for finding the statutory scheme to be inadequate." *Spectron Dev. Lab. v. Am. Hollow Boring Co.,* 1997-NMCA-025, ¶ 24, 123 N.M. 170, 936 P.2d 852; *see also Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A,* 909 F.Supp. 948, 956-57 (D.N.J. 1995) (applying New Jersey law; declining to recognize common-law negligence cause of action in favor of drawer against depositary bank); *Lee Newman, M.D., Inc. v. Wells Fargo Bank,* 87 Cal.App.4th 73, 104 Cal. Rptr.2d 310 (.2001) (applying revised version of UCC; holding that Article 3's scheme of loss allocation has displaced common-law negligence action against depositary bank for failing to exercise ordinary care in taking checks with indorsements forged by dishonest employee of drawer; observing that plaintiff-drawer has express remedy under UCC Section 3-405(b)).

{15} We are not persuaded that denying White Sands a cause of action against First National is unfair. As between White Sands and First National, White Sands clearly was in the far better position to prevent the fraud in the first place by exercising care in choosing and supervising its employees and by adopting internal procedures to prevent or detect forgeries.

{16} White Sands argues that the existence of a statutory negligence cause of action is established by the law of the case. According to White Sands, First National should have raised the argument that Section 55-3-406 does not create an affirmative cause of action in the first appeal as an alternative ground for affirming the district court's order granting summary judgment on Count I of White Sands' complaint. White

Sands asserts that First National is precluded from relying on any argument that First National could have, but did not, make in the first appeal.

{17} We agree with White Sands that First National could have raised the argument that Section 55–3–406 does not create an affirmative cause of action during the first appeal. Rule 12–201(C) NMRA 2001 provides that "[a]n appellee may, without taking a cross-appeal or filing a docketing statement or statement of the issues, raise issues on appeal for the purpose of enabling the appellate court to affirm ... the judgment or order appealed from." First National did not take advantage of the opportunity provided by Rule 12–210(D)(3) NMRA 2001 to file a response to our calendar notice in which we proposed summary reversal. Thus, the argument that Section 55–3–406 does not create an affirmative cause of action was not called to our attention. We decided the appeal on the narrow ground that under our system of liberal notice pleading, Count I of White Sands' complaint gave sufficient notice of an attempt to plead a statutory cause of action. We did not reach the issue of the legal sufficiency of such a claim, even though that issue was "logically 'antecedent to and ultimately dispositive' " of the dispute before us. *Crocker v. Piedmont Aviation, Inc.,* 49 F.3d 735, 740 (D.C.Cir.1995) (quoting *United States Nat'l Bank of Oregon v. Independent Ins. Agents of America,* 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)).

{18} White Sands' preclusion argument implicates the "waiver variant" of the law of the case.[1] *Id.* (distinguishing "waiver variant" from "core" law of the case). The waiver variant "is justified by ... a practical concern for judicial economy, as it channels into the first appeal issues whose early resolution might obviate the need for later rounds of remands and appeals." *Id.* However, law of the case principles are "flexible and discretionary." *Kucel v. N.M. Med. Review Comm'n,* 2000–NMCA–026, ¶ 17, 128 N.M. 691, 997 P.2d 823; *Crocker,* 49 F.3d at 740 (noting that law of the case is a "prudential rule rather than a jurisdictional one"). When we are convinced that application of the law of the case would result in the "futile exercise," of creating manifestly erroneous law solely for application to the case at hand, we may exercise our discretion and apply the " 'law of the land rather than the law of the case.' " *Kucel* at ¶ 18 (quoting *Farmers' State Bank v. Clayton Nat'l Bank,* 31 N.M. 344, 355, 245 P. 543, 548 (1925)). We think that this is an appropriate case for exercising our discretion to reach the merits of First National's argument. White Sands will suffer no prejudice, other than being deprived of the opportunity to assert a claim that we have concluded does not exist.

## CONCLUSION

{19} We hold that Section 55–3–406 does not create an affirmative cause of action that would support a claim by White Sands against First National under the facts of this case. The order of the district court granting summary judgment on the issue of First National's affirmative defenses is vacated as moot. This case is remanded for further proceedings consistent with this opinion.

{20} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.

---

**1.** We note that there is federal authority suggesting that the waiver variant of the law of the case has limited applicability to an appellee's failure to urge all possible alternative grounds for affirmance. *E.g. Schering Corp. v. Illinois Antibiotics Co.,* 89 F.3d 357 (7th Cir.1996) (observing that "[t]he urging of alternative grounds for affirmance is a privilege rather than a duty"); *Crocker,* 49 F.3d at 740–41 (discussing reasons for applying waiver principle less stringently to appellees). Because we are satisfied that this case in any event falls within the firmly-established manifest-error exception to the law of the case, we leave open the question of whether New Mexico courts would follow federal courts in applying the waiver variant of the law of the case less stringently to an appellee's failure to urge possible grounds for affirmance.