## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-037**

**Filing Date: December 11, 2019**

**No. A-1-CA-36634**

**VERONICA VIGIL,**

      Plaintiff-Appellant,

v.

**ANNE TAINTOR and ANNE
TAINTOR, INC.,**

      Defendants-Appellees,

and

**DOODLET'S LTD.; JANE DOE;
TALIN ENTERPRISES; LA
MONTANITA FOOD COOP;
COST PLUS, INC.; and NOW
WE'RE COOKING,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Francis J. Mathew, District Judge**

Certiorari Denied, May 11, 2020, No. S-1-SC-38158. Released for Publication October 6, 2020.

Western Agriculture, Resource and
Business Advocates, LLP
A. Blair Dunn
Dori E. Richards
Albuquerque, NM

for Appellant

Allen, Shepherd, Lewis & Syra, P.A.
Christopher P. Winters

Courtney A. Schumacher
Albuquerque, NM

for Appellees

**OPINION**

**MEDINA, Judge.**

**{1}** Plaintiff Veronica Vigil appeals the district court's decision granting summary judgment in favor of Defendants Anne Taintor and Anne Taintor, Inc. (collectively, Defendants) with respect to Plaintiff's claims for defamation, false light, and appropriation, as well as her claim under the Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019). We hold that the district court properly granted summary judgment.

**BACKGROUND**

**{2}** Sometime in 2010, Anne Taintor, Inc., a corporation owned by Taintor, began manufacturing and selling several products—including magnets, flasks, and cards—bearing Plaintiff's image with the caption "I'm going to be the most popular girl in rehab!" Defendants did not have Plaintiff's permission to use her image, and this went unnoticed by Plaintiff until 2013, when her daughter purchased a flask bearing Plaintiff's image and gave it to Plaintiff. Plaintiff filed the instant action on November 18, 2014.

**{3}** After extensive discovery, Defendants moved for summary judgment on Plaintiff's defamation, false light, and appropriation claims, arguing that the statute of limitations had expired by operation of New Mexico's single publication rule. *See* NMSA 1978, § 41-7-1 (1955). Additionally, Defendants argued summary judgment was proper on Plaintiff's UPA claim based on the unauthorized use of her image because Plaintiff never purchased any products that Defendants sold, and therefore, did not have standing. In response, Plaintiff argued that the single publication rule was not applicable to her claims, and if it was, Defendants triggered a new statute of limitations period under the republication exception to the single publication rule by manufacturing and selling additional products containing Plaintiff's image. Plaintiff also argued that she had standing to bring the UPA claim, despite not purchasing anything, because "[s]he is within the chain of purchasing relationship sufficient to bring a UPA claim." After holding a hearing, the district court granted summary judgment in favor of Defendants. In its order granting summary judgment, the district court held that the single publication rule was applicable to Plaintiff's claims and further held that the republication exception did not apply. The district court also held that Defendants established a prima facie case for summary judgment on Plaintiff's UPA claim, which Plaintiff failed to rebut. This appeal followed.

**DISCUSSION**

**Standard of Review**

**{4}**     An appeal from the grant of a motion for summary judgment presents a question of law, which we review de novo. *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Waterfall Cmty. Water Users Ass'n v. N.M. State Eng'r*, 2009-NMCA-101, ¶ 11, 147 N.M. 20, 216 P.3d 270 (internal quotation marks and citation omitted). When the moving party makes a prima facie showing that summary judgment is proper, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). This burden cannot be met with allegations or speculation, but only with admissible evidence demonstrating a genuine fact issue requiring trial. Rule 1-056(E) NMRA. Claimed disputed facts "cannot serve as a basis for denying summary judgment" if the evidence adduced is insufficient to support "reasonable inferences." *Romero*, 2010-NMSC-035, ¶ 10. Reasonable inferences are not supposition or conjecture; they are logical deductions from proven facts. *Id.* In our review, "[w]e resolve all reasonable inferences in favor of the party opposing summary judgment, and we view the pleadings, affidavits, depositions, answers to interrogatories, and admissions in the light most favorable to a trial on the merits." *Madrid v. Brinker Rest. Corp.*, 2016-NMSC-003, ¶ 16, 363 P.3d 1197 (internal quotation marks and citation omitted).

**I.     The District Court Properly Granted Summary Judgment on Plaintiff's Defamation/Invasion of Privacy Claims Under the Single Publication Rule**

**{5}**     Claims based on injuries to a person's reputation fall under a three-year statute of limitations.[1] *See* NMSA 1978, § 37-1-8 (1976). New Mexico follows the single publication rule, which provides:

> No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture.

---

1 We note that some courts have characterized appropriation claims—unlike other invasion of privacy claims—as actions based on an injury to one's property, which fall under a four-year statute of limitations period. *See* NMSA 1978, § 37-1-4 (1880); *see, e.g., Benally v. Hundred Arrows Press, Inc.*, 614 F. Supp. 969, 978-79 (D.N.M. 1985) (characterizing the tort of "misappropriation of likeness" as a property claim falling under the four-year statute of limitations period), *rev'd on other grounds sub nom. Benally ex rel. Benally v. Amon Carter Museum of W. Art*, 858 F.2d 618 (10th Cir. 1988). It appears New Mexico courts have yet to address the question of whether a claim for appropriation falls under the three-year or four-year statute of limitations. However, Plaintiff did not raise this argument below, and on appeal she argues that the three-year statute of limitations applies. Accordingly, we assume for purposes of this case that Plaintiff's appropriation claim falls under the three-year statute of limitations for injuries to reputation.

Section 41-7-1. "Under this rule, multiple disseminations of the same content give rise to only one cause of action, and the statute of limitations runs from the point at which the original dissemination occurred." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 9, 145 N.M. 533, 202 P.3d 126. "The single publication rule is designed to protect the defendants and the courts from a multiplicity of suits, an almost endless tolling of the statute of limitations, and diversity in applicable substantive law." *Id.* ¶ 11 (alteration, internal quotation marks, and citation omitted).

**{6}** Defendants argue that Plaintiff's claims for defamation, false light, and appropriation are barred by the statute of limitations under the single publication rule. While Defendants do not dispute that some merchandise with Plaintiff's picture was sold within the three-year period prior to the filing of this lawsuit, Defendants argue, and the district court agreed, that the single publication rule is applicable to Plaintiff's claims, and therefore, her claims began accruing when Defendants initially offered the offending merchandise for sale to the public. Plaintiff, in turn, argues that the single publication rule does not apply to her claims, and if it does, the republication exception applies.[2] We hold that the district court properly applied the single publication rule to Plaintiff's claims. We further hold that Plaintiff failed to present sufficient evidence to raise a genuine issue of material fact that would warrant the application of the republication exception.

## A.    Scope of Review

**{7}** As an initial matter, we address Defendants' contention that Plaintiff failed to preserve her arguments surrounding the applicability of the single publication rule.[3] In her response to Defendants' motion for summary judgment, Plaintiff argued that the single publication rule should not apply to her claims. However, at the hearing on the motion, she did not challenge the single publication rule's applicability, but instead argued that the republication exception to the rule should apply. In the midst of her argument, the district court sought clarification of Plaintiff's position and asked, "I think I

---

2 Plaintiff also argues that the statute of limitations should be tolled under the discovery rule. However, Plaintiff does not develop this argument. Nor does it appear that Plaintiff preserved this argument for appeal. We, therefore, do not address it. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

3 Defendants additionally invoke the law of the case doctrine in an effort to limit the scope of our review. Specifically, Defendants claim that Plaintiff's failure to appeal a separate order by the district court granting summary judgment in favor of several non-related defendants on the basis of the single publication rule conclusively established the single publication rule's applicability as the law of the case. We note that "the issue of the extent to which a party's failure to appeal a ruling may justify application of the law of the case doctrine to that issue" appears to remain an open question in New Mexico. *Kucel v. N.M. Med. Review Comm'n*, 2000-NMCA-026, ¶ 17 n.3, 128 N.M. 691, 997 P.2d 823 (declining to address the issue because appellees did not provide authority for their position); *see also White Sands Forest Prod., Inc. v. First Nat'l Bank of Alamogordo*, 2002-NMCA-079, ¶ 18, 132 N.M. 453, 50 P.3d 202 (acknowledging, but declining to apply, the "waiver variant" of the law of the case doctrine). Accordingly, because Defendants do not develop this argument, and because the district court's order was not applicable to Plaintiff's claims against Defendants, we decline to invoke the law of the case doctrine. *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 21, 145 N.M. 769, 205 P.3d 816 (noting that "the law-of-the-case doctrine is discretionary and flexible" (internal quotation marks and citation omitted)); *White Sands Forest Prod., Inc.*, 2002-NMCA-079, ¶ 18 (exercising discretion to reach the merits of the case because the appellees would not suffer any prejudice).

am understanding you to say that the single-publication rule is the law of the case here, because you are definitely arguing [an] exception to that, am I correct?" Plaintiff's counsel replied, "We are arguing that [the] republication exception applies here, yes." After argument on the motion ended, the district court ruled that the single publication rule applied stating, "It is clear and certainly undisputed that the . . . rule is applicable to this case." Defendants point to this exchange, claiming that Plaintiff conceded that the single publication rule was applicable at the motion hearing, and therefore waived any objection she had to its application. We disagree.

**{8}**     "We will not review arguments that were not preserved in the district court." *Vill. of Angel Fire v. Bd. of Cty. Comm'rs of Colfax Cty.*, 2010-NMCA-038, ¶ 15, 148 N.M. 804, 242 P.3d 371. Nor will we consider as preserved arguments that are waived below. *See, e.g.*, *Papatheofanis v. Allen*, 2010-NMCA-036, ¶¶ 29-31, 148 N.M. 791, 242 P.3d 358 (holding that the appellant failed to preserve an argument when she withdrew her motion). "To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted); *see* Rule 12-321(A) NMRA. The preservation rule serves three primary purposes: "(1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791. "When these purposes are not served, the preservation requirement should not be applied in an unduly technical manner." *McLelland v. United Wis. Life Ins. Co.*, 1999-NMCA-055, ¶ 24, 127 N.M. 303, 980 P.2d 86 (alterations, omission, internal quotation marks, and citation omitted).

**{9}**     While the exchange between the district court and Plaintiff may give the impression that Plaintiff waived her objection to the application of the single publication rule, it is also possible that Plaintiff simply misunderstood the court's question. Plaintiff's answer to the district court's initial query does not appear to be entirely responsive to the object of the question. Rather than agreeing that Plaintiff was no longer challenging the applicability of the single publication rule, Plaintiff's response appeared to clarify only what she was arguing before the question was asked (i.e., that the republication exception applied). Unlike other cases where we have found waiver, Plaintiff did not unambiguously disclaim her objection to the application of the single publication rule. *See, e.g.*, *Papatheofanis*, 2010-NMCA-036, ¶¶ 29-31. Additionally, by arguing an exception, it appears Plaintiff was implicitly objecting to the application of the general rule. Under these circumstances, we are hesitant to say that Plaintiff waived her argument surrounding the single publication rule's applicability. As Plaintiff challenged the application of the single publication rule in her written response to Defendants' motion for summary judgment, which gave Defendants the opportunity to address the argument—and gave the district court the opportunity to consider and issue a ruling on the issue—we conclude that Plaintiff sufficiently preserved this issue for our review. *See*

*Gracia v. Bittner*, 1995-NMCA-064, ¶ 18, 120 N.M. 191, 900 P.2d 351 (stating that the preservation requirement "should be applied with its purposes in mind, and not in an unduly technical manner").

## B.     The Single Publication Rule

**{10}**     Plaintiff does not challenge that Defendants established a prima facie case for summary judgment under the single publication rule. Rather, Plaintiff raises several legal arguments against the application of the rule to this case. Specifically, Plaintiff calls into question whether the single publication rule should be applied to her claims based on appropriation and false light, and whether the rule applies to cases involving manufactured goods, as opposed to traditional types of mass media. Additionally, Plaintiff contends that the point of publication at which the statute of limitations begins accruing under the single publication rule should not always be the initial publication of the offending material, but rather a more fact intensive inquiry. We address each argument in turn.

**{11}**     With respect to Plaintiff's first argument, other than pointing out that our courts have not yet applied the single publication rule to appropriation and false light claims, Plaintiff fails to demonstrate, and we fail to see, how the district court erred in applying the single publication rule to her claims. Section 41-7-1, by its plain language, applies to "damages for libel or slander *or invasion of privacy or any other tort* founded upon any single publication or exhibition or utterance[.]" *Id.* (emphasis added); *Town & Country Food Stores, Inc. v. N.M. Regulation & Licensing Dep't*, 2012-NMCA-046, ¶ 9, 277 P.3d 490 ("The first rule is that the plain language of a statute is the primary indicator of legislative intent. Courts are to give the words used in the statute their ordinary meaning unless the Legislature indicates a different intent." (alteration, internal quotation marks, and citation omitted)). As both false light and appropriation are subcategories of the tort of invasion of privacy, we fail to see, and Plaintiff fails to explain, how it was error for the district court to apply the single publication rule to Plaintiff's claims. *See Moore v. Sun Pub. Corp.*, 1994-NMCA-104, ¶ 28, 118 N.M. 375, 881 P.2d 735 (recognizing four categories of the tort of invasion of privacy, which include false light and appropriation).

**{12}**     Plaintiff also fails to develop her argument that the single publication rule should not apply to cases involving manufactured goods. Again, Plaintiff simply points out that our courts have not yet applied the single publication rule to a similar case. While we acknowledge that we have had little opportunity to apply the single publication rule, we conclude that the district court did not err in applying the single publication rule here. We explain.

**{13}**     Section 41-7-1 is not comprehensive in terms of the scenarios and types of media covered by the single publication rule, but rather merely illustrative of what constitutes a "single publication or exhibition or utterance." *Id.* ("No person shall have more than one cause of action for damages . . . founded upon any single publication or exhibition or utterance, *such as* any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or

any one exhibition of a motion picture." (emphasis added)); *State v. Martinez*, 1999-NMSC-018, ¶ 27, 127 N.M. 207, 979 P.2d 718 (noting that a list beginning with "such as" was "intended to be illustrative rather than exhaustive"). While Section 41-7-1 was enacted over sixty years ago, this Court has only issued one published opinion analyzing the single publication rule. In *Woodhull*, we considered the application of the single publication rule to internet publications. 2009-NMCA-015, ¶¶ 8-14. There, we acknowledged that "[t]he single publication rule is designed to protect the defendants and the courts from a multiplicity of suits, an almost endless tolling of the statute of limitations, and diversity in applicable substantive law." *Id.* ¶ 11 (alteration, internal quotation marks, and citation omitted). We emphasized that "[a]bsent this rule, publishers and the mass media would be subject to a multiplicity of claims leading to potential harassment, excessive liability, and draining of judicial resources." *Id.* Comparing public websites to traditional mass media, we noted that content on the Internet is also broadly available, easily reproduced, and "may be viewed by literally millions in a broad geographic area for an indefinite time period." *Id.* Given these similarities, we concluded that there was a "similar if not greater need for the policy advanced by the single publication rule in the Internet realm." *Id.*

**{14}** Although we were concerned with internet publications in *Woodhull*, we believe the same logic applies to this case. Similar to traditional forms of mass media, manufactured goods can be mass-produced for public consumption, and retailers may sell them to consumers across broad geographic areas. Likewise, these goods may be bought and viewed by countless individuals for an indefinite amount of time after they were originally manufactured and sold to the public. Without the single publication rule, the sellers of these goods "would be subject to a multiplicity of claims leading to potential harassment, excessive liability, and draining of judicial resources." *Id.* The fact that Plaintiff's image was printed on flasks and magnets, rather than books or websites, does not reduce these concerns. While we recognize that there may be a legitimate argument against the application of the single publication rule to cases involving manufactured goods, Plaintiff has failed to present one here. Accordingly, we hold that the single publication rule applies to cases involving manufactured goods such as those at issue here.

**{15}** Lastly, Plaintiff contends that the point at which the statute of limitations begins accruing under the single publication rule should not always be the initial publication, but rather a more fact intensive inquiry. However, Plaintiff does not define the scope of the fact intensive inquiry she advocates and does not cite any authority in support of her argument, and we, therefore, assume none exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that when a party fails to cite authority for an argument, we may assume none exists). Instead, Plaintiff relies on a purported lack of authority for the proposition that the initial publication triggers the limitations period. We disagree. Our Court stated in *Woodhull* that "[u]nder [the single publication] rule, multiple disseminations of the same content give rise to only one cause of action, *and the statute of limitations runs from the point at which the original dissemination occurred.*" 2009-NMCA-015, ¶ 9 (emphasis added). Holding that the triggering event is something other than the original publication would defeat one of the

primary purposes of the single publication rule: to protect against "an almost endless tolling of the statute of limitations." *Id.* ¶ 11 (internal quotation marks and citation omitted). Accordingly, we hold that the district court properly applied the single publication rule. Consequently, the three-year statute of limitations for Plaintiff's claims began running from the time Defendants first sold the products bearing Plaintiff's image to the public in 2010, unless the republication exception applies, as we discuss below.

## C.    Republication

**{16}**    One exception to the single publication rule is republication, which allows for a new cause of action that restarts the statute of limitations. *See id.* ¶ 12. "The justification for the [republication] exception is to allow redress when the republished material is intended to expand the scope of the original distribution." *Id.* "Republication occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition." *Id.* (internal quotation marks and citation omitted). The point at which republication occurs depends heavily on the facts of each case and turns on the content of the second publication as it relates to the first. *Id.* ¶¶ 12, 16. "[M]ere technical modifications, as opposed to changes in the nature of the information itself, are insufficient to constitute republication." *Id.* ¶ 14. However, "[w]hen a second publication goes beyond mere editing or adds content, it may properly be considered a republication if the effect is more than a delayed circulation of the original edition." *Id.* ¶ 16 (internal quotation marks and citation omitted). Plaintiff argues her claims are not barred by the statute of limitations under operation of the single publication rule because Defendants' "printing [of Plaintiff's] same image with the defamatory statement[] on different runs throughout the year, for multiple years, and also on different merchandise" constituted republication. Although we agree that these circumstances may give rise to republication, we fail to see how Plaintiff supported these assertions with admissible evidence. We explain.

**{17}**    As a preliminary matter, we note that Plaintiff fails to cite specific portions of the record that support her assertions. Instead, Plaintiff's brief in chief includes one general citation to her response in opposition to Defendants' motion for summary judgment, which consists of over one hundred pages. It is the duty of the parties to cite to specific portions on the record supporting their arguments, *see* Rule 12-318(A)(4) NMRA, and this general citation to over one hundred pages of the record proper is inadequate to support meaningful review by our Court. Independently reviewing the record in the light most favorable to Plaintiff, *see Madrid*, 2016-NMSC-003, ¶ 16, we conclude that Plaintiff failed to present evidence creating a genuine dispute of material fact as to whether Defendants republished her image.

**{18}**    In support of Defendants' summary judgment motion, Taintor submitted an unsworn affirmation[4] affirming that she never personally manufactured or sold any

---

4 We note that Rule 1-056 does not mention the use of an unsworn affirmation made pursuant to Rule 1-011(B) NMRA in lieu of an affidavit. However, because Plaintiff does not challenge Defendants' use of the unsworn affirmation to support their motion for summary judgment, we assume, without deciding, that it is an acceptable substitute for an affidavit. *Compare Kiehne v. Atwood*, 1979-NMSC-098, ¶ 55, 93 N.M. 657, 604 P.2d 123 (stating

products with Plaintiff's image. She also affirmed that Anne Taintor, Inc. first manufactured and offered for sale magnets, flasks, and cards with Plaintiff's image in 2010. Additionally, Taintor affirmed that Anne Taintor, Inc. did not manufacture or offer for sale any other products with Plaintiff's image, and that it never modified any magnet, flask, or card with Plaintiff's image. Plaintiff filed a response arguing, among other things, that there was a genuine issue of material fact regarding whether the republication exception applies because Defendants reprinted Plaintiff's image over the course of several years and on other products such as shot glasses, napkins, and calendars. In support of her response, Plaintiff cited Defendants' answers to her interrogatories stating that "Anne Taintor, Inc. had manufactured a product containing Plaintiff's image [from 2010 to 2013.]" However, Defendants' answer, by itself, does not demonstrate that Defendants manufactured *additional* editions of the products or reprinted Plaintiff's image on other products during that time period. Other than pointing to Defendants' answer, Plaintiff cannot direct us to any evidence demonstrating that Defendants manufactured additional editions of the magnets, flasks, and cards after they initially manufactured them in 2010. Nor can Plaintiff point to any evidence demonstrating that Defendants altered Plaintiff's image or the text on any of these products after their initial manufacture.

**{19}** Of particular relevance to Plaintiff's contentions, Plaintiff did not come forward with any evidence demonstrating that Defendants manufactured and sold other products with Plaintiff's image. While Plaintiff attached an exhibit showing shot glasses with the caption "I'm going to be most popular girl in rehab!" the glasses did not contain Plaintiff's image, but that of another woman.[5] Additionally, although Plaintiff attached exhibits of napkins and mugs with Plaintiff's image, Plaintiff failed to produce evidence demonstrating that Defendants manufactured and sold these items.[6] Nor did Plaintiff point to any evidence showing when these products were manufactured and sold. Instead, we are left only with Plaintiff's unsupported arguments, which "are not evidence upon which a trial court can rely in a summary judgment proceeding." *V.P. Clarence Co. v. Colgate*, 1993-NMSC-022, ¶ 2, 115 N.M. 471, 853 P.2d 722. Accordingly, we

---

that an affidavit is "a written statement, under oath, sworn to or affirmed by the person making it before some person who has authority to administer an oath or affirmation"), *with* Rule 1-011(B) ("Any written statement in a pleading, paper, or other document that is not notarized shall have the same effect in a court proceeding as a notarized written statement, provided that the statement includes the following: (1) the date that the statement was given; (2) the signature of the person who gave the statement; and (3) a written affirmation under penalty of perjury under the laws of the State of New Mexico that the statement is true and correct."); *see also* Rule 1-011 comm. cmt. (stating that Rule 1-011 was amended to "permit self-affirmation in lieu of notarization of any written sworn statement required or permitted under the Rules of Civil Procedure for the District Courts").

5 Plaintiff summarily argues that "[t]he similarity of the picture [of the other woman] to Plaintiff's image and use of the known defamatory statement is a question of fact for the jury to assess whether it too meets the republication standards." Plaintiff does not develop this argument any further or explain how the use of another person's photo can give rise to republication. We, therefore, do not address this argument. *See Corona*, 2014-NMCA-071, ¶ 28 ("This Court has no duty to review an argument that is not adequately developed.").

6 Indeed, Defendants' answers to Plaintiff's interrogatories, which Plaintiff included in her response, suggest that these products were manufactured and sold by Defendants' licensees, not Defendants. As Plaintiff does not argue that the conduct of Defendants' licensees can establish the requirements for republication (and Defendants' liability), we need not decide the issue here. *See Corona*, 2014-NMCA-071, ¶ 28.

conclude Plaintiff did not demonstrate the existence of specific admissible evidentiary facts disputing whether Defendants altered their products in any way that would suggest republication, rather than a "delayed circulation of the original edition." *Woodhull*, 2009-NMCA-015, ¶ 16 (internal quotation marks and citation omitted); *see Romero*, 2010-NMSC-035, ¶ 10 ("[Once the moving party has met its initial burden of establishing a prima facie case for summary judgment], the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." (internal quotation marks and citation omitted)).

**{20}** Plaintiff does not address the lack of evidentiary facts in the record. Instead, Plaintiff attempts to analogize this case to *Rinaldi v. Viking Penguin, Inc.*, 420 N.E.2d 377 (N.Y. 1981). Plaintiff's reliance is misplaced. In *Rinaldi* the Court of Appeals of New York held that republication occurred when a publisher released a hard-cover edition of a book to the public and, approximately one year later, marketed a paperback edition of the book using unbound and hardbound copies it had on hand from the original issue. *Id.* at 378-80, 382. However, unlike the instant case, there were undisputed facts in *Rinaldi* demonstrating republication. The publisher added new covers, changed the publisher name, revised the title page to include an updated publication date, changed the copyright page to include a new identifying number, and added new information indicating that the book would be simultaneously published in foreign countries. *See id.* In contrast, here, Plaintiff does not point to, and we cannot find, any evidence indicating that Defendants republished Plaintiff's image. Therefore, we conclude that the district court properly granted Defendant's motion for summary judgment on Plaintiff's claims for defamation, false light, and appropriation.

## II. The District Court Properly Granted Summary Judgment on Plaintiff's UPA Claim

**{21}** Defendants argue that the district court properly granted summary judgment because Plaintiff did not have standing to bring a UPA claim for the unauthorized use of her image, as she did not purchase anything. Plaintiff does not dispute that she did not purchase any products made or sold by Defendants. Rather, she argues that her daughter's act of purchasing a flask manufactured by Defendants and giving the flask to Plaintiff was sufficient to grant Plaintiff standing under the UPA, which should be interpreted broadly. While we agree that the UPA should be interpreted liberally to protect innocent consumers, Plaintiff fails to demonstrate how her claims as a non-buyer fall within the scope of the UPA's protection.

**{22}** In enacting the UPA, the Legislature created a private cause of action for "any person who suffers any loss of money or property . . . as a result of any employment by another person of a method, act or practice declared unlawful by the [UPA, to] bring an action to recover actual damages." Section 57-12-10(B). The UPA makes unlawful unfair or deceptive trade practices, *see* § 57-12-3, which are defined, in relevant part, as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale . . . of goods and services . . . by a person in the regular course of the person's trade or commerce, that

may, tends to or does deceive or mislead any person . . . ." Section 57-12-2(D). Thus, a claimant must prove:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made *in connection with the sale . . . of goods or services* in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 166 P.3d 1091 (emphasis added). "Since the UPA constitutes remedial legislation, we interpret [its] provisions . . . liberally to facilitate and accomplish its purposes and intent [to protect innocent consumers]." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 48, 329 P.3d 658 (internal quotation marks and citation omitted).

**{23}**     Plaintiff first relies on *Lohman* to support her contention that the UPA should be construed broadly to include her claims, focusing on its language noting that the "conjunctive phrase 'in connection with' seems designed to encompass a broad array of commercial relationships." 2007-NMCA-100, ¶ 21 (quoting § 57-12-2(D)). However, contrary to Plaintiff's assertions, *Lohman* does not stand for the proposition that the UPA's scope is so broad as to encompass claimants who did not actually purchase anything; *Lohman* merely stands for the proposition that a UPA claimant need not allege a commercial transaction specifically *between the claimant and the defendant*. In *Lohman*, we considered the plaintiff's UPA claim against a seatbelt manufacturer for its representations to a distributor that facilitated car sales to consumers. *See id.* ¶ 25. The defendants argued "that the 'connection with sale of goods' requirement can only be satisfied upon a showing that the defendant made a misrepresentation when selling a product to the plaintiff." *Id.* Notwithstanding the indirect relationship between the manufacturer and consumers, we noted that "[t]he[] provisions [of the UPA] appear to be crafted so as to ensure that the UPA has a broad scope—arguably, broad enough to encompass misrepresentations which bear on downstream *sales* by and between third parties." *Id.* ¶ 30 (emphasis added). Accordingly, we concluded that "both the plain language of the [UPA] and the underlying policies suggest that a commercial transaction *between a claimant and a defendant* need not be alleged in order to sustain a UPA claim." *Id.* ¶ 33 (emphasis added). Unlike the defendants in *Lohman*, Defendants, here, do not argue that Plaintiff must have purchased the flask directly from them. Rather, Defendants argue that Plaintiff must have purchased the flask *from someone*, an argument that *Lohman* did not address. Thus, *Lohman* is unavailing.

**{24}**     Plaintiff's reliance on *Maese v. Garrett*, 2014-NMCA-072, 329 P.3d 713, is similarly misplaced. In *Maese*, the plaintiff brought a UPA claim against his financial advisors for erroneously telling him he could withdraw money tax-free from an annuity that the defendants recommended he purchase. *Id.* ¶¶ 3-7. The defendants argued that the plaintiff's claim did not fall under the UPA because he did not pay them for the incorrect financial advice or for the withdrawal from the annuity. *Id.* ¶ 16. Nonetheless,

citing our liberal construction of the UPA, we found it "immaterial that [the p]laintiff did not specifically compensate [the d]efendants for financial advising services where [the d]efendants received compensation from third parties (e.g., from [the annuity company] for the annuity in question) for investment advice that led to [the p]laintiff's *purchase* of their products." *Id.* ¶ 19 (emphasis added). *Maese* is therefore distinguishable, as the plaintiff in that case purchased something (i.e., the annuity).

**{25}** Nor does Plaintiff find support in *Hicks v. Eller*, 2012-NMCA-061, 280 P.3d 304. In *Hicks*, the plaintiff brought a UPA claim against an art appraiser who purchased two paintings from the plaintiff after the plaintiff declined to retain the appraiser's services to value the art. *Id.* ¶¶ 4-9, 20. Relying on *Lohman* and emphasizing the UPA's purpose as a consumer protection statute, we concluded that the UPA requires that "somewhere along the purchasing chain, the claimant did *purchase* an item that was at some point sold by the defendant." *Hicks*, 2012-NMCA-061, ¶¶ 19-20 (emphasis added). Accordingly, we concluded that the plaintiff, who did not purchase the defendant's services and acted as the seller of the art, had no standing to bring a UPA claim against the appraiser. *Id.* ¶ 20. ("Consistent with its purpose as consumer protection legislation, the UPA gives standing only to *buyers* of goods and services." (emphasis added)).

**{26}** We recognize that "[i]t is the task of the courts to ensure that the [UPA] lends the protection of its broad application to innocent consumers." *B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 48 (internal quotation marks and citation omitted). However, other than citing the above cases and arguing that the UPA should be interpreted broadly, Plaintiff fails to demonstrate how her claim—which is not connected to any goods or services she purchased—falls within the purview of the UPA. Given this lack of development, we decline to address Plaintiff's argument any further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." (citation omitted)). Accordingly, we hold that, under the facts of this case, the district court properly granted summary judgment on Plaintiff's UPA claim.

## CONCLUSION

**{27}** For the foregoing reasons, we affirm the district court's grant of summary judgment.

**{28}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JULIE J. VARGAS, Judge**